UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRIS LYNN CANADAY,<br>　　　　Plaintiff,<br>　　v.<br>DEBORAH JEAN PEOPLES-PERRY,<br>　　　　Defendant. | Case No.17-cv-05602-JSC<br><br>**ORDER RE: MOTION TO STRIKE COMPLAINT**<br><br>Re: Dkt. No. 7 |

　　　　The parties are sisters involved in a dispute regarding their late parents' estate. Plaintiff Kris Lynn Canaday alleges that her sister, Defendant Deborah Jean Peoples-Perry, made false statements in an email and on Facebook in violation of state defamation and related laws. Ms. Peoples-Perry responded by filing the now pending motion to strike the complaint under California's anti-SLAPP statute, California Code of Civil Procedure 425.16.[1] (Dkt. No. 7.) Having considered the parties' briefs and having had the benefit of oral argument on December 14, 2017, the Court GRANTS IN PART and DENIES IN PART the motion to strike. Ms. Canaday's claims premised on the June 2, 2017 email are covered by the anti-SLAPP statute and barred by the California litigation privilege, Cal. Civ. Code § 47(b). However, the litigation privilege does not bar the claims premised on the June 5, 2017 Facebook post as a matter of law, and there is a genuine dispute as to whether the statements in the post are true.

//

//

---

[1] Both parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 6 & 12.)

## BACKGROUND

**A. Complaint Allegations**

Ms. Canaday resides in Louisiana and her sister, Ms. Peoples-Perry, resides in Santa Rosa, California. (Complaint at ¶¶ 3-4.) They are the beneficiaries of the Terrance L. Peoples and Georgia L. Peoples Revocable Trust dated January 25, 2012 (hereafter "the Trust"). (*Id*. at ¶ 5.) Under the Trust terms, Ms. Canaday was to become a trustee after the death of both of her parents. (*Id*.)

In November 2014, Terrance passed away. (*Id*; Dkt. Nos. 11 at ¶ 2; Dkt. No. 18 at ¶ 11.) Shortly before Georgia's death Ms. Peoples-Perry petitioned ex parte to remove Ms. Canaday as the Trust's successor Trustee. (Complaint ¶ 8; Dkt. No.9 at 4.[2]) The ex parte petition was denied and Ms. Peoples-Perry then dismissed her petition. (*Id*.) In January 2017, Ms. Peoples-Perry filed another trust petition seeking to remove Ms. Canaday as trustee based on allegations of fiscal mismanagement of trust assets. (*Id*. at ¶ 9; Dkt. No. 9 at 29.) That petition was dismissed in August 2017. (*Id*.)

On June 1, 2017, while the second petition was pending, counsel retained by Ms. Canaday emailed Ms. Peoples-Perry a three-page demand letter. (Dkt. No. 11 ¶ 12, Dkt. No. 11 at 16-18.) The letter accused Ms. Peoples-Perry of making defamatory statements about Ms. Canaday in unspecified telephone calls and emails and demanded that Ms. Peoples-Perry "make a full, complete retraction within 10 days of the date hereof." (Dkt. No. 11 at 18.)

The next day Ms. People-Perry responded to counsel's demand letter:

> I'd prefer to settle out of court, so I end up with an inheritance but I'm not going to let Kristine lie cheat and steal from the estate and do nothing.
> I have no satisfactory accounting.
> There was cash in moms house that she hasn't accounted for.
> I was given zero notice about dividing the contents of the garage so she took it all.
> She wrote herself a check for 18k that was not authorized and I believe according to the trust
> disinherits her.
> She emptied my parents home with no notice and without me

---
[2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

> present.
> I took care of my parents for three years 24/7 and have not been compensated.
> Yes I want to try and buy moms house.
> I want to know what she has taken to Louisiana, gifted or donated.
> Since I've been ill and without council I'll either ask for that me to get proper representation when my health improves and ask in person that her activity stop until then.
> I'd like a deposition of her husband who had intimate knowledge of what she has done if she wants to go this rout.
> Kristine also threatened to kill me and she's in possession of my fathers (a USMC w/ an unregistered hand gun).
> I was told that my parents phone number would be transferred to me and when AT&T got her on the phone she refused. I'm also no interested in any debt she's assigned to that number.
> I think you need to educate your client about her fiduciary duty and what she stands to loose.
> I also don't want her accessing the storage facilities without me or the safe deposit box.
> Perhaps there should be a third party present.

(Dkt. No. 1-1.) Over the ensuing weeks Ms. Peoples-Perry and counsel then had various email communications regarding the retraction demand. (Dkt. No. 11 at 26-41.)

Four days after the initial retraction demand, on June 5, Ms. Peoples-Perry posted the following message to her Facebook account along with a photo of her father and a tattoo her arm:

> My father favored me, my sister threatened to kill me and has an unregistered hand gun by my father who was a USMC weapons specialist  She threated my life over the division of the estate. I've filed paperwork with the court and I'm mad as hell. She fucks with me, my Heavenly Father and USMC father have my six, Semper Fi! I am not afraid!

(Dkt. No. 1-2.) The Facebook post was seen by an unknown number of people, although as of June 21, the statement was no longer visible on Facebook. (Complaint at ¶ 23.)

**B. Procedural Background**

Ms. Canaday filed this action on September 27, 2017 pleading three claims for relief under California law: (1) defamation; (2) false light invasion of privacy; and (3) intentional infliction of emotional distress. ( Dkt. No. 1.) Ms. Peoples-Perry responded by filing the underlying motion to strike pursuant to California's anti-SLAPP statute, California Code of Civil Procedure 425.16. (Dkt. No. 8.) That motion is now fully briefed.

## REQUEST FOR JUDICIAL NOTICE

Ms. Peoples-Perry has filed two requests for judicial notice in connection with her anti-

1  SLAPP motion. (Dkt. Nos. 9 & 23.) She requests judicial notice of the following pleadings from
2  the state court probate action: (1) Ms. Peoples-Perry's first trust petition filed September 1, 2016;
3  (2) Ms. Peoples-Perry's September 7, 2016 ex parte motion; (3) Ms. Peoples-Perry's second trust
4  petition filed January 24, 2017; (4) Ms. Canaday's response to the trust petition filed May 31,
5  2017; (5) Ms. Peoples-Perry's reply brief filed June 7, 2017; (6) Ms. Canaday's first accounting
6  filed July 13, 2017; (7) Ms. Canaday's second accounting filed July 20, 2017; (8) the Order
7  approving the first and second accountings filed August 11, 2017; (9) Ms. Peoples-Perry's
8  September 13, 2016 dismissal of the first trust petition; and (10) Ms. Peoples-Perry's August 13,
9  2017 dismissal of the second trust petition. (*Id.*)

The court may take judicial notice of matters in the public record which includes proceedings in other cases. *See Bennett v. Medtronic, Inc.*, 285 F.3d 801, 803 n. 2 (9th Cir. 2002) ("We may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." (alteration and internal quotation marks omitted)). Under Federal Rule of Evidence 201(b), a "judicially noticed fact must be one not subject to reasonable dispute in that it is either: (1) generally known within the territorial jurisdiction of the trial court; or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." A court may "take judicial notice of undisputed matters of public record, including documents on file in federal or state courts." *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (internal citation omitted).

Ms. Canaday has not opposed the request for judicial notice or otherwise disputed that the documents attached are not in fact filings from the state court probate action. Accordingly, Ms. Peoples-Perry's requests for judicial notice are GRANTED. (Dkt. Nos. 9 & 23.)

**EVIDENTIARY OBJECTIONS**

Both parties have filed objections to the declarations submitted in support and opposition of this motion arguing that the declarations misstate the evidence, lack personal knowledge, and constitute hearsay. (Dkt. Nos. 20, 24, 25.) These objections are overruled as moot as the Court did not rely on any of the objected to evidence in deciding this motion.

**DISCUSSION**

The California Legislature enacted California Code of Civil Procedure Section 425.16 to curtail "strategic lawsuits against public participation," known as "SLAPP" actions, finding "a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for redress of grievances." Cal. Civ. Proc. Code § 425.16(a). The Act, otherwise known as the anti-SLAPP statute, permits defendants to bring a "special motion to strike" if a cause of action against them arises "from any act ... in furtherance of the ... right of petition or free speech ... in connection with a public issue," unless "the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." Cal. Code Civ. Proc. § 425.16(b)(1). The California Legislature expressly intended that section 425.16 "be construed broadly" in protection of the public interest. Cal. Code Civ. Proc. § 425.16(a). Although it is a state statute, a party may bring an anti-SLAPP motion to strike state law claims in federal court. *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1109 (9th Cir. 2003) (internal citation omitted). This Court, sitting in diversity, follows the California courts' two-step process for analyzing an anti-SLAPP motion. *Hilton v. Hallmark Cards*, 599 F.3d 894, 903 (9th Cir. 2010).

First, the moving party must make "a threshold showing ... that the act or acts of which the plaintiff complains were taken 'in furtherance of the right of petition or free speech under the United States or California Constitution in connection with a public issue,' as defined in the statute." *Equilon Enters., LLC v. Consumer Cause, Inc.*, 29 Cal.4th 53, 67 (2002) (quoting Cal. Code Civ. Proc. § 425.16(b)(1)). The moving party does so by showing that an act underlying the claims to be stricken fits one of the categories spelled out in section 425.16(e). *Navellier v. Sletten*, 29 Cal.4th 82, 88 (2002) (internal citation omitted.) These four categories are: (1) "any written or oral statement or writing made before a legislative, executive, or judicial proceeding"; (2) "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body"; (3) written or oral statements made "in a public forum in connection with an issue of public interest"; and (4) any other conduct furthering a right of petition or free speech in connection with a public issue. Cal. Code Civ. Proc. § 425.16(e). "The latter two categories require a specific showing the action concerns a matter of public

5

interest; the first two categories do not require this showing." *Damon v. Ocean Hills Journalism Club*, 85 Cal. App. 4th 468, 474 (2000) (internal citation omitted).

Second, once the moving party has met its burden on the first prong, the burden shifts to the complainant to show that there is a probability of prevailing on its claims. *Navellier*, 29 Cal.4th at 88. The statute focuses not on the form of the plaintiff's claim, but the underlying nature of the defendant's activity giving rise to the asserted liability. *Tuchscher Dev. Enters., Inc. v. San Diego Unified Port Dist.*, 106 Cal.App. 4th 1219, 1232 (2003).

Ms. Canaday's claims challenge three categories of statements. The first cause of action for defamation (libel) alleges Ms. People-Perry's June 2, 2017 email to Ms. Canady's counsel and Ms. People-Perry's June 5, 2015 Facebook post are defamatory. The second cause of action for false light invasion of privacy is based on the same two written statements. And the third cause of action for intentional infliction of emotional distress is premised on those two statements along with unidentified statements to unknown family members. (Complaint ¶ 33.) The Court will address each category of statements separately as Ms. Canady's decision to plead several statements in each cause of action cannot defeat an anti-SLAPP motion to strike a claim to the extent it is based in part on a protected statement. *See Baral v. Schnitt*, 1 Cal. 5th 376, 395-96 (2016) (holding that an anti-SLAPP motion to strike may be granted to strike allegations of protected activity even if other allegations in the pleaded cause of action survive); *see also Graham-Sult v. Clainos*, 756 F.3d 724, 735 (9th Cir. 2014) ("Where a cause of action is based on both protected activity and unprotected activity, it is subject to [the anti-SLAPP statute] unless the protected conduct is *merely incidental* to the unprotected conduct." (emphasis in original)) (internal quotation marks and citation omitted).

**A.    June 2, 2015 Email**

    **1.    Protected Activity**

The June 2, 2017 email is covered by the anti-SLAPP statute, § 425.16(e)(2)—any writing made in connection with an issue under consideration or review by a judicial body. Communications in connection with *anticipated* litigation are considered to be "under consideration or review by a judicial body." *Neville v. Chudacoff*, 160 Cal.App.4th 1255, 1263

6

(2008); *see also id.* at 1270 (noting that many anti-SLAPP cases concern prelitigation communications involving demand letters "or other statements to adverse parties or potential adverse parties"). As Ms. Canaday admitted at oral argument, counsel's demand letter to Ms. Peoples-Perry is covered by section 425.16(e)(2) as a statement in connection with anticipated litigation. It follows that Ms. People-Perry's response to that letter is also a statement in connection with anticipated litigation. Indeed, Ms. Canaday's opposition does not argue otherwise; instead, the opposition ignores that Ms. People-Perry was responding to a threat of litigation (a threat which in fact materialized).

Ms. Canaday's reliance on *Paul v. Friedman*, 95 Cal. App. 4th 853, 866 (2002), is misplaced. There, the plaintiff alleged that defendant conducted a harassing investigation into personal matters bearing no relationship to the claims asserted in the arbitration; the court concluded that the investigation did not have anything to do with "an issue under consideration or review" in the arbitration, and thus did not qualify as protected activity. *Id.* at 866. Here, in contrast, the issue under review as a result of counsel's demand letter is Ms. Peoples-Perry's allegedly defamatory statements, including her insinuation that Ms. Canaday threatened to kill her.

Accordingly, Ms. People-Perry has met her prima facie burden of showing that the claims premised on the June 2, 2017 email are protected activity under the anti-SLAPP statute.

### 2. Probability of Prevailing

The burden thus shifts to Ms. Canady to show a likelihood of prevailing on the merits. In this context this burden means she must show that the June 2, 2017 email is not shielded by California's litigation privilege or that there is at least a genuine dispute as to whether it does. *Yu v. Signet Bank/Virginia*, 103 Cal.App.4th 298, 317 (2002) (summary judgment standard applies to anti-SLAPP motions to strike); *see also Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 264 (9th Cir. 2013) (if the statements lie within the litigation privilege, the plaintiff has not shown a probability of prevailing on the merits).

The litigation privilege, California Civil Code section 47(b), "protects participants in judicial proceedings from derivative tort actions based on communications in or regarding the judicial proceeding." *eCash Techs., Inc. v. Guagliardo*, 127 F.Supp.2d 1069, 1082 (C.D. Cal.

2000), aff'd, 35 Fed.Appx. 498 (9th Cir. 2002). The privilege is absolute and "applies to any publication required or permitted by law in the course of a judicial proceeding to achieve the objects of the litigation, even though the publication is made outside the courtroom and no function of the court or its officers is involved." *Jacob B. v. Cnty. of Shasta*, 40 Cal.4th 948, 955 (2007) (internal citation and quotation marks omitted). The privilege applies broadly to "bar[] all tort causes of action except malicious prosecution," *Jacob B.*, 40 Cal.4th at 958, 960, and applies to communicative acts "(1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Id*. at 955.

Drawing all reasonable inference in Ms. Canaday's favor, there is no dispute that the June 2, 2017 email is covered by the litigation privilege. The email begins by stating that Ms. Peoples-Perry would "prefer to settle out of court," and then in response to counsel's demand that she retract her allegations as to Ms. Canady's malfeasance, Ms. Peoples-Perry reiterates the allegations that counsel had threated litigation over. A communication is privileged if it is "in furtherance of the objects of the litigation"; that is, it must be "connected with, or have some logical relation to, the action, i.e., that it not be extraneous to the action." *Action Apartment Ass'n, Inc. v. City of Santa Monica*, 41 Cal. 4th 1232, 1251 (2007). A response to a legal demand letter from counsel is indisputably connected with anticipated litigation and falls squarely within the litigation privilege.

Ms. Canaday responds that statements made to unrelated third parties are not protected by the litigation privilege. But Ms. Canaday's counsel is not an unrelated third party: he is her agent retained to demand that Ms. People-Perry retract her accusations or face a defamation lawsuit. Indeed, Ms. Canaday argues that statements in demand letters are logically connected to litigation and therefore protected by the privilege. (Dkt. No. 17 at 18.) Statements made in response to the demand letter are also logically connected to litigation.

As the June 2, 2017 email is covered by the litigation privilege, the motion to strike Ms. Canaday's claims to the extent they are based upon the June 2, 2017 email is granted.

//

8

**B. June 5, 2017 Facebook Post**

The outcome is different for the June 5 Facebook post. Assuming without deciding that it constitutes protected activity, Ms. Canaday has met her burden of showing a probability of prevailing.

**1. Litigation privilege**

First, for the litigation privilege to apply the statement must further the objects of the litigation. A public post on the internet can be found by a reasonable trier of fact to do no such thing. Generally, "republication[] to nonparticipants in the action are generally not privileged under [the litigation privilege], and are thus actionable unless privileged on some other basis." *GetFugu, Inc. v. Patton Boggs LLP*, 220 Cal. App. 4th 141, 152 (2013) (concluding that a press release and tweet were not shielded by the litigation privilege); *see also Abuemeira v. Stephens*, 246 Cal. App. 4th 1291, 1299 (2016) ("communications to the general public through the Internet and the media are not protected by the litigation privilege."). Ms. Peoples-Perry's argument that her post was intended to make a public record and was intended to alert the police about Ms. Canaday's threat to kill her is unpersuasive. While an actual police report would be privileged, public dissemination of the information is not. *Compare Shaddox v. Bertani*, 110 Cal. App. 4th 1406, 1415 (2003) (communication to an official agency which is designed to prompt action is considered a part of an official proceeding for purposes of [ ] section 47) *with GetFugu*, 220 Cal. App. 4th at 154 ("If anyone with an interest in the outcome of the litigation is a person to whom a privileged communication could be made, [the privilege] would be eviscerated.").

**2. Common law fair reporting privilege**

Alternatively, Ms. Peoples-Perry suggests that the Facebook post is shielded by the common law fair reporting privilege. There are numerous problems with this argument. First, California has a statutory fair reporting privilege codified at Civil Code Section 47(d) which protects a "fair and true report in, or a communication to, a public journal, of ... a judicial ... proceeding, or anything said in the course thereof." Ms. Peoples-Perry does not argue, because she cannot, that Facebook qualifies as a "public journal" under the statute. Instead, she insists that California also has a common law fair reporting privilege, but she fails to cite to a single

1 California case discussing a common law fair reporting privilege. The only California case she

2 cites was decided under Section 47(d) which Ms. Peoples-Perry agrees does not apply here. *See*

3 *Argentieri v. Zuckerberg*, 8 Cal. App. 5th 768, 787 (Cal. Ct. App. 2017), reh'g denied (Mar. 15,

4 2017), review denied (May 24, 2017). There is thus no support for the proposition that California

5 has a common law fair reporting privilege that would operate more broadly than the statutory

6 privilege to cover any communication regarding a judicial proceeding.

7 Second, even if the Court were to consider the Nevada cases Ms. Peoples-Perry cites, they

8 are not analogous here. Nevada law protects a communication that "extends beyond news media

9 to any person who makes a republication of a judicial proceeding from material available to the

10 general public" which is "fair, accurate, and impartial" *Ferm v. McCarty*, No. 2:12-CV-00782-

11 GMN, 2013 WL 800536, at *8 (D. Nev. Jan. 28, 2013), report and recommendation adopted, No.

12 2:12-CV-00782-GMN, 2013 WL 800819 (D. Nev. Feb. 20, 2013) (internal citations omitted). In

13 her second trust petition, Ms. Peoples-Perry states that

> at one point Canaday had a conversation with Perry which included Canaday's statement that she 'could kill someone.' This statement took Perry by surprise, and Perry considered it to be a veiled threat. Canaday has possession of the parties' father's unregistered handgun.

(Dkt. No. 9 at 38:9-12.) In contrast, her Facebook post stated:

> My father favored me, my sister threatened to kill me and has an unregistered hand gun by my father who was a USMC weapons specialist She threated my life over the division of the estate. I've filed paperwork with the court and I'm mad as hell. She fucks with me, my Heavenly Father and USMC father have my six, Semper Fi! I am not afraid!

(Dkt. No. 1-2.) "While *Sahara Gaming* allows a party to report preliminary judicial proceedings from a fair and neutral stance, a party may not don itself with the judge's mantle, crack the gavel, and publish a verdict through its 'fair report.'" *Lubin v. Kunin*, 117 Nev. 107, 115 (2001) (rejecting fair reporting privilege because the republication lacked neutrality and collecting cases regarding the same); *see also Sahara Gaming*, 115 Nev. at 215 ("In exchange for this absolute privilege, comes the requirement and responsibility that the report be fair, accurate, and impartial. Opinions must be left to the editorial pages or editorial segments of television broadcasts.").

10

1 Viewing the evidence in the light most favorable to Ms. Canaday, the Facebook post is not "fair,
2 accurate, and impartial."

### 3. The truth of the Facebook post

Ms. Peoples-Perry insists that her statements are substantially true and thus not actionable. "To establish the defense of truth—i.e., that the statement is not false—defendants do not have to prove the 'literal truth' of the statement at issue." *Hughes v. Hughes*, 122 Cal. App. 4th 931, 936 (2004) (internal citation omitted). "California law permits the defense of substantial truth and would absolve a defendant even if [he or] she cannot justify every word of the alleged defamatory matter; it is sufficient if the substance of the charge be proved true, irrespective of slight inaccuracy in the details. Minor inaccuracies do not amount to falsity so long as 'the substance, the gist, the sting, of the libelous charge be justified." *Id*. (internal citation and quotation marks omitted, alterations in original). However, in a SLAPP motion the Court cannot "weigh credibility" or "evaluate the weight of the evidence. Instead, [the Court] accept[s] as true all evidence favorable to the plaintiff and assess the defendant's evidence only to determine if it defeats the plaintiff's submission as a matter of law." *See Overstock.com, Inc. v. Gradient Analytics, Inc*., 151 Cal. App. 4th 688, 699–700 (2007). "Only a cause of action that lacks 'even minimal merit' constitutes a SLAPP." *Id*.

Ms. Canaday has satisfied her burden to show that the Facebook post is untrue. Although Ms. Canaday admits that she said that said "I could kill someone" in a conversation with Peoples-Perry, she insists that she was referring to her belief that "when I was younger, I had the ability to physically (not with a gun) protect myself in self-defense, and the statement was followed by the statement that I "later realized I could not." (Dkt. No. 18 at ¶ 42.) As to her possession of her father's guns, she states that she did not have access to them because they were packed and placed in a locked gun cabinet in a storage unit in Santa Rosa and she lives in Louisiana. (*Id.* at ¶ 43.) Given the disputes of fact regarding the parties' versions of events, the Court cannot conclude as a matter of law that the Facebook post is substantially true. *See Overstock*, 151 Cal.App.4th at 701 ("The key is not parsing whether a published statement is fact or opinion, but whether a reasonable fact finder could conclude the published statement declares or implies a provably false assertion of

11

fact").

***

As Ms. Canaday has demonstrated a probability of prevailing on her claims arising from the Facebook post, the motion to strike the causes of action to the extent they are based on the post is denied.

### C. Statements to Family Members

In the defamation (libel) cause of action Ms. Canaday alleges that Ms. Peoples-Perry has also made the statements in the June 2, 2017 email to family members. (Complaint ¶ 14.) But as the defamation claim is for libel, and the Complaint does not allege the statements to family members were in writing, the Complaint does not plausibly allege that Ms. Peoples-Perry made libelous statements to family members. *See* Cal. Civ. Code § 45. Thus, the Court does not construe the first cause of action as challenging any statements to family members.

The claim for intentional infliction of emotional distress also references allegations to family members, but does not identify any particular statements or any particular family members. It thus does not allege facts that plausibly suggest Ms. Peoples-Perry defamed Ms. Canaday to family members. *See Starr v. Bac*a, 652 F.3d 1202, 1216 (9th Cir. 2011) (holding that the complaint must allege sufficient facts to suggest a plausible claim for relief). Accordingly, the Court also does not construe this cause of action as including any statements other than the June 2 email and June 5 Facebook post.

## CONCLUSION

To the extent Ms. Canaday's first, second, and third causes of action are based upon the June 2, 2017 email the motion to strike is GRANTED. The June 2, 2017 email is protected activity within the anti-SLAPP statute and the litigation privilege applies as a matter of law. As this flaw cannot be cured by amendment, the motion is granted without such leave.

To the extent the first, second, and third causes of action are based upon the June 5, 2017 Facebook post, the motion to strike is DENIED. Assuming without deciding that the Facebook post constitutes anti-SLAPP protected activity, and drawing all reasonable inferences in Ms. Canaday's favor, Ms. Canaday has met her burden of showing a probability of prevailing on the

12

merits.

The motion to strike is granted with leave to amend to allege claims based upon statements to family members provided Ms. Canaday can make such claims consistent with Federal Rule of Civil Procedure 11. *See Verizon Delaware, Inc. v. Covad Communications Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004).

Ms. Canaday's obligation to file an amended complaint, if any, and all discovery are stayed until further order of the Court. The case management conference is continued to March 1, 2018 at 1:30 p.m. in Courtroom F, 450 Golden Gate Ave., San Francisco, California. The parties shall file a Joint Case Management Conference Statement by February 22, 2018.

This Order disposes of Docket Nos. 7, 9, 15, and 23.

**IT IS SO ORDERED.**

Dated: December 15, 2017

JACQUELINE SCOTT CORLEY
United States Magistrate Judge